UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THOMAS SPEED,                                    :
                                                 :
                          Plaintiff,             :
                                                 :
                                                 :
           - against -                           :
                                                 :
THE LONG ISLAND RAILROAD COMPANY,                :
                                                 :
                          Defendant.             :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/10/2021

20-CV-1394 (RWL)

**DECISION AND ORDER:
SUMMARY JUDGMENT**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Thomas Speed brings this action under the Federal Employer's Liability Act ("FELA"). Defendant LIRR moves for summary judgment against Mr. Speed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Notice of Motion, Dkt. 31.) For the reasons set forth below, Defendant's motion is DENIED.

## FACTS[1]

Thomas Speed ("Speed" or "Plaintiff") was hired by the Long Island Railroad ("LIRR" or "Defendant") in 2006 and worked as a car appearance maintainer and a pipe fitter for a couple of years. (Speed Aff. ¶ 2.[2]) After completing a nine-month LIRR Car Repairman training program, Speed served as a car repairman, and sometimes a car inspector, for approximately a decade. (Speed Aff. ¶¶ 3-5.) Speed asserts that at the beginning of each shift the gang foreman was required to hold a job briefing regarding the

---

[1] The facts are drawn from Defendant's statements pursuant to Local Civil Rule 56.1, Plaintiff's responses to Defendant's 56.1 statements, and the evidence submitted by the parties. Where appropriate, the Court recounts the facts in the light most favorable to Plaintiff, the non-moving party. The facts are undisputed unless otherwise indicated.

[2] "Speed Aff." refers to Affidavit of Plaintiff (Dkt. 41.)

1

day's assignment and job duties along with a discussion of the "safety rule of the day." (Speed Aff. ¶ 9.)  The job briefing was intended to give both the gang foreman and the employees the opportunity to ask questions regarding their assignments.  (Speed Aff. ¶ 10.)

On October 10, 2018, Speed was assigned to remove the walls of a train bathroom on an LIRR M-3 train car.  (Dkt. 31, Ex. 2, ¶¶ 1,3.)  Neither Speed nor his assigned partner had ever performed that particular task on an M-3 train model.  (Speed Aff. ¶¶ 8, 12.) Speed asserts that no job briefing took place on the morning of his injury (or on many other days), and that he was left to his own devices in assessing how to safely perform the job.  (Speed Aff. ¶ 11.)

The bathrooms on the M-3 trains were large enough for only one person, so Speed entered and remained in the bathroom alone while his partner stood outside to hand him tools.[3]  (Speed Aff. ¶ 14.)  To deconstruct the walls of the bathroom, Speed assessed that the top of the toilet box assembly had to be raised off the box assembly.  (Speed Aff. ¶ 15.)  The top of the toilet box assembly was connected to the wall by a hinge and, to remove it, Speed raised it into a vertical position.   (Speed Aff. ¶ 16.)   While Speed unscrewed the wall and box assembly from their molding, he braced himself with his right hand on top of the box assembly.  (Speed Aff. ¶ 16.)  As Speed worked to unfasten the screws, the lid of the toilet box swung down, and crushed his right hand.  (Speed Aff. ¶¶ 16-17.)  Subsequent medical examinations revealed that Speed sustained a tear in the

---

[3] During previous bathroom repairs on different train models, two repairmen would enter the bathroom together and complete the repair together.  (Dkt. 32, Ex. 7, p.14, ¶¶ 12-19.)

joint of his right hand.  (Speed Aff. ¶ 19.)  The injury required surgery and extensive physical therapy and left Speed unable to work for nine months.  (Speed Aff. ¶ 19.).

Speed asserts that if a job briefing had taken place, the gang foreman would have learned that Speed had never worked in the bathroom of an M-3 train car, and Speed would have been provided with a "safe manner to perform the job or been warned of the danger of bracing himself by placing his hand on the top of the box with an unsecured upright lid."  (Dkt. 39 at 5.)  LIRR counters that Speed received a job briefing to discuss the particular task prior to commencing the work; Speed made no complaints; and Speed performed the task for 40 minutes with his co-worker without issue.  (Dkt. 32 ¶ 6.)

LIRR points to the fact that an Accident/Incident Report signed by Speed (the "Incident Report") after the incident checks "yes" next to the following questions: "Was an onsite Job Safety Briefing/instructions performed prior to starting work?" and "If Yes, was this specific task discussed at the onsite briefing?"  (Dkt. 43 ¶ 10, Dkt. 32, Ex. B at ECF 18.)  That portion of the Incident Report, however, is dated October 26, 2013 – sixteen days after Speed's accident.[4]  (Dkt. 32, Ex. B at ECF 18.).  Speed does not deny the authenticity of the document or that he signed it.  (Dkt. 43 ¶ 16.)

---

[4] LIRR policy mandates "All Accident Investigations, AR-20 and AR-21s must be submitted to the Central Manpower Office within 7 days of the Accident."  (Dkt. 32, Ex. B at ECF 1.)  It is unclear when the AR-20 – Employee Injury/Illness Report was submitted to the Central Manpower Office.  (See Dkt. 32, Ex. B at ECF 4-8.)  But it appears that the AR-21: Accident/Incident Findings was not dated until October 26, 2018, sixteen days after the accident.  The instructions for the AR-21 state "paper and electric copies must be completed as soon as practicable, but no later than fifteen (15) days after the occurrence or notification of the Accident."

## PROCEDURAL HISTORY

Speed commenced this action on February 18, 2021.  (Dkt. 1.)  The complaint alleges that the LIRR caused Speed's injuries by failing to provide a safe workplace, failing to promulgate safety rules, failing to warn Speed of dangers, and failing to provide necessary tools and equipment.  (Dkt. 1 ¶ 9.)  LIRR filed its answer on May 19, 2020.  (Dkt. 12.)  The parties completed discovery on March 8, 2021.  (Dkt. 23.)  On April 5, 2021, LIRR filed a motion for summary judgment.  (Dkts. 31, 32.)  Speed filed his opposition to LIRR's motion on June 11, 2021 (Dkts. 39-41), and LIRR filed its reply on June 25, 2021.  (Dkt. 43.)

## LEGAL STANDARDS

**A.**     **Summary Judgment**

To obtain summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the movant must show that there is no genuine dispute of material fact.  Fed. R. Civ. P. 56(a).  A fact is material "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct 2505, 2510 (1986).  The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

The opposing party must then come forward with specific materials establishing the existence of a genuine dispute; conclusory statements or mere allegations are not sufficient to defeat summary judgment.  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *Geyer v. Choinski*, 262 F. App'x 318, 318 (2d Cir. 2008).  Where the nonmoving party fails to make "a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552; *accord El-Nahal v. Yassky*, 835 F.3d 248, 252 (2d Cir. 2016).

The moving party may demonstrate the absence of a genuine issue of material fact "'in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim.'" *Nick's Garage, Inc. v. Progressive Casualty Insurance Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988)).

A party asserting that a fact cannot be, or is genuinely, disputed "must support the assertion by" either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Powell v. National Board of Medical Examiners*, 364 F.3d 79, 84 (2d Cir. 2004) (if movant demonstrates absence of genuine issue of material fact, nonmovant bears burden of demonstrating "specific facts showing that there is a genuine issue for trial").

In assessing the record to determine whether there is a genuine issue of material fact, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513; *Smith v. Barnesandnoble.com, LLC*, 839 F.3d 163, 166 (2d Cir. 2016); *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995) ("The district court must draw all reasonable inferences and

resolve all ambiguities in favor of the nonmoving party and grant summary judgment only if no reasonable trier of fact could find in favor of the nonmoving party").

At the same time, the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. Summary judgment may be granted, however, where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Id.* at 249-50, 106 S. Ct. at 2511. If there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).

## B. Federal Employer's Liability Act (FELA)

Under FELA "[e]very common carrier by railroad while engaging in [interstate commerce] … shall be liable in damages to any person suffering injury while he is employed by such carrier … for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, … machinery, track, … or other equipment." 45 U.S.C. § 51. Because FELA is a "broad remedial statute whose objective is to provide … remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer," the ordinary summary judgment standard becomes "considerably more plaintiff-friendly" in FELA cases." *Kendall v. Metro–North Commuter Railroad*, No. 12-CV-6015, 2014 WL 1885528, at *2 (S.D.N.Y. May 12, 2014). A FELA case "must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff." *Syverson v. Consolidated Rail Corp.*, 19 F.3d 824, 828 (2d Cir.1994). The liberal construction given to FELA reflects

the "strong federal policy in favor of letting juries decide cases arising under FELA." *DeRienzo v. Metropolitan Transportation Authority*, 237 F. App'x 642, 644 (2d Cir. 2007) (internal quotations omitted); *Sinclair v. Long Island Railroad,* 985 F.2d 74, 76–77 (2d Cir. 1993) (internal quotations and citations omitted).

The elements of negligence under FELA are the same as under common law — duty, breach, foreseeability, and causation — but the plaintiff's burden in establishing those elements is relaxed under FELA. *Coale v. Metro–North Commuter Railroad Co.*, 621 F. App'x 13, 14 (2d Cir. 2015); *Tufariello v. Long Island Railroad Co.*, 458 F.3d 80, 87 (2d Cir. 2006); *Moran v. MTA Metro-N. Railroad Co.,* No. 19 CIV. 3079, 2021 WL 1226771, at *2 (S.D.N.Y. Mar. 31, 2021). As a result, "the quantum of evidence that suffices in FELA cases is significantly lower than in ordinary torts cases," *Nelson v. Metro–North Commuter Railroad.,* 235 F.3d 101, 106 (2d Cir. 2000), and "an employer may be held liable under FELA for risks that would otherwise be too remote to support liability at common law." *Tufariello,* 458 F.3d at 87.

While FELA is not a strict liability statute, jurors have "more latitude to infer negligence than at common law, such that the question can rarely be taken from them and decided by the court as a matter of law." *Coale*, 621 F. App'x at 14 (citing *Williams v. Long Island Railroad Co.*, 196 F.3d 402, 407 (2d Cir. 1999). Ultimately, "the right of the jury to pass upon the question of fault and causality must be most liberally viewed." *Williams,* 196 F.3d at 406 (citation omitted); *see also Ulfik v. Metro–North Commuter Railroad*, 77 F.3d 54, 58 (2d Cir. 1996) ("The right of the jury to decide issues of fact should also be liberally construed").

## DISCUSSION

Whether summary judgment should be granted turns on the evidence of whether or not a job briefing occurred on the day of Plaintiff's accident.  While LIRR maintains that a job briefing took place on the day of the accident, Speed avers that the briefing did not take place.  Summary judgment must be denied because there is evidence by which a reasonable juror could conclude that no job briefing occurred and that the absence of a job briefing caused Speed's injury.  The discussion that follows first addresses the factual dispute, and then addresses its materiality to Speed's claim.

**A.      The Job-Briefing Dispute**

Speed asserts that the gang foreman on duty was required to hold a job briefing at the start of each shift and that no job briefing took place the day of his accident.  (Speed Aff. ¶¶ 9-11.)  LIRR disputes that assertion and maintains that a job briefing did in fact take place on the day of Speed's accident.  (Dkt. 32 ¶ 6.)  As support, LIRR points to the fact that Speed signed the Incident Report on which "yes" had been checked next to the question asking if a job briefing occurred.  (Dkt. 43 ¶ 14.)

Relying on Supreme Court precedent, LIRR urges that the Incident Report is "objective evidence" and that Speed's statement to the contrary cannot create a dispute of fact sufficient to defeat summary judgment.  (Dkt. 43 ¶ 12) (citing *Scott v. Harris*, 550 U.S. 372, 379-81, 127 S. Ct. 1769, 1775-77 (2007)).  The comparison is inapt.  In *Scott v. Harris*, the objective evidence in question was a video recording of the disputed event, which was countered only by the plaintiff's declaratory statement.  550 U.S. at 380, 127 S. Ct. at 1775.  *Scott* would be analogous if there were a video of the job briefing taking place with Plaintiff present, but there is no such video.  Further, the document LIRR relies

on is hardly a contemporaneous recounting of a job meeting.  To the contrary, it was created more than two weeks after the incident.

LIRR asserts that Speed was an experienced LIRR employee and union member with collectively bargained rights and that he could have refused to sign the Incident Report if he did not agree with its contents.  (Dkt. 43 ¶ 14.)  That is a point for cross-examination, but not a basis for summary judgment.  The Incident Report is a ten-page document, requiring multiple narrative answers and containing at least 100 boxes to be checked or left unchecked.  (*See* Dkt. 32, Ex.  B at ECF 9-18.)  The questions regarding whether the job briefing occurred are on the last page of the report and could have been checked by LIRR as the narrative description directly below looks markedly different from Speed's handwriting on earlier pages containing the "Statement of Employee."  (See Dkt. 32 Ex. B at ECF 15, 18.)  What to make of that, and what Speed did or did not understand in signing the report, is for a jury to decide, particularly given "the strong federal policy in favor of letting juries decide cases arising under FELA."  *DeRienzo*, 237 F. App'x at 644 (2d Cir. 2007) (internal quotations omitted).

The Incident Report no doubt will be useful fodder for impeachment, and it may ultimately doom Speed's case.  But it does not alone eliminate the dispute of material fact.

**B.    A Reasonable Juror Could Find Each Element Of A Negligence Claim**

There is no dispute that LIRR is a common carrier engaging in interstate commerce and is therefore subject to FELA.  *See* 45 U.S.C. § 51.  The parties also do not dispute that LIRR had a duty to provide its employees with a safe workplace and that Speed suffered injuries while he was acting within the scope of his employment.  As explained

above, a core dispute concerns the job-briefing issue, which touches upon multiple elements; namely, the existence of a hazardous condition, notice, and causation.   The Court addresses these elements in order.

### 1.    Negligence

Negligence requires the existence of a hazardous condition of which the defendant knew or should have known about.   *Ulfik*, 77 F.3d at 58-9 (citing *Gallick v. Baltimore & Ohio Railroad Co.*, 372 U.S. 108, 117, 83 S. Ct. 659, 665 (1963)); *Hairston v. Long Island Railroad Co.,* No. 00-CIV-7208 , 2003 WL 21254196, at *5 (S.D.N.Y. May 30, 2003) ("A railroad is liable under FELA for failure to provide a safe working environment "when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees""").   The toilet in the M-3 train car arguably was a hazardous condition by virtue of there being no latch to secure the lid.   In his complaint, Speed claimed exactly that, asserting that LIRR was negligent for failing to provide "a latch to secure the toilet box top in the up position."   (Dkt. 1 ¶ 9.)

In his opposition to LIRR's motion, however, Speed does not address the latch issue, even though LIRR set forth both factual and legal arguments as to why the latch claim could not be sustained.   (*See* Dkt. 32 ¶¶ 7-9.)   By failing to respond to those arguments, Plaintiff has abandoned his latch-based claim.   *See Jackson v. Federal Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition [to summary judgment] that relevant claims or defenses that are not defended have been abandoned"); *Collins v. City of New York*, 295 F. Supp. 3d 350, 361 (S.D.N.Y. 2018) ("Federal courts may deem a

claim abandoned when a party opposing summary judgment fails to address the movant's argument in any way") (internal quotation marks and brackets omitted).

Nonetheless, Speed can still point to a hazardous condition in LIRR's failure to hold a job briefing.  "[T]o establish negligence, a FELA plaintiff need only prove that [the railroad] could have reasonably foreseen that [the condition] would increase the likelihood of injury, and that [the railroad] failed to take reasonable precautions."  *Tufariello*, 458 F.3d at 91 (citing *Ulfik*, 77 F.3d at 58) (internal quotations omitted).  LIRR thus would be negligent if it could have reasonably foreseen that failing to hold a job briefing would increase the likelihood of Speed suffering an injury.

Under FELA, job briefings are generally seen as important procedures to safeguard worker safety and, in some circumstances, failure to hold a job briefing is deemed negligence per se.[5]  While there is no regulation or statute mandating a job safety briefing in this case, courts' imposition of a negligence per se finding under certain conditions underscores the import of job briefings as safety mechanisms in general. Indeed, by referring to the meeting at issue here as an "onsite job safety briefing," LIRR implicitly recognizes that a purpose of the briefing is to decrease the risk of injury.  (Dkt. 31 ¶ 11.)

LIRR further argues that there is no evidence that it had notice of any dangerous condition relating to Plaintiff's accident.  At the very least, however, LIRR had notice of its

---

[5] Job briefings are required by statute any time a train track is "fouled" by equipment or personnel blocking the tracks while the job is completed, 49 C.F.R. § 214.315, and violation of this (or any) safety statute under FELA demands a finding of negligence.  *See Morant v. Long Island Railroad*, 66 F.3d 518, 523 (2d Cir. 1995) ("It is well-settled that the FELA requires a finding of negligence per se when there has been a violation of a safety statute specifically aimed at the railroad industry") (internal quotation marks omitted).

failure to hold a job briefing – a condition that it created.  In a FELA case, actual notice may be imputed where a defendant creates the unsafe condition that caused the injury. *DeFilippo v. National Railroad Passenger Corp.*, No. 17-CV-2789, 2019 WL 3531761, at *7 (S.D.N.Y. Aug. 2, 2019); *Decker* v. *Middletown Walmart Supercenter Store*, No. 15-CV-2886, 2017 WL 568761, at *6 (S.D.N.Y. Feb. 10, 2017).  In short, there is evidence by which a reasonable jury could find that LIRR had notice of a hazardous condition.

### 2.      Causation

In addition to the existence of a hazardous condition and notice, causation is another element in dispute.  The standard for causation in FELA actions is particularly liberal.  "FELA's language on causation … is as broad as could be framed," and thus, "in comparison to tort litigation at common law, a relaxed standard of causation applies under FELA."  *CSX Transportation, Inc. v. McBride*, 564 U.S. 685, 691-92, 131 S. Ct. 2630, 2636 (2011) (citations and internal quotation marks omitted).

At the summary judgment stage, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence *played any part, even the slightest*, in producing the injury or death for which damages are sought."  *Id.* at 692, 131 S. Ct. at 2636 (quoting *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 508, 77 S. Ct. 443, 448 (1957)) (emphasis added).  Thus, Plaintiff need only point to evidence to support a finding that LIRR's negligence played a part — "no matter how small" — in bringing about his injury.  *Id.* at 698, 131 S. Ct. at 2640.

As explained above, Speed has submitted sufficient testimony to raise a question of fact as to whether the job briefing was conducted on the day of his injury.  Speed asserts that, absent the briefing, he did not know how to perform his task safely and if it

had occurred, he would have been given instructions on how to prevent the type of injury he suffered.  (Speed Aff. ¶¶ 17, 18.)  Given the low bar for showing causation at the summary judgment stage in FELA cases, there is sufficient evidence from which a jury could find that LIRR caused, at least in part, Mr. Speed's injury.  *See, e.g Tufariello,* 458 F.3d at 89 (reversing grant of summary judgment in FELA case and citing "played any part, even the slightest" standard); *Kendall*, 2014 WL 1885528 at *5 (denying summary judgment in part due to relaxed causation standard in FELA cases); *Krause v. CSX Transportation*, 984 F. Supp.2d 62, 81-82 (N.D.N.Y. 2013) (denying summary judgment as to causation in FELA case because fact issue existed as to whether particular meeting could be considered a lunch break); *see generally Ramsay v. National Railroad Passenger Corp.*, No. 12-CV-1999  2015 WL 2168062, at *9 (May 7, 2015) (denying summary judgment as to causation and "reiterate[ing] that FELA requires a relaxed standard for causation, and as a result cases go to the jury on far more tenuous causal links than at common law").

## **CONCLUSION**

For the foregoing reasons, Defendant LIRR's motion for summary judgment is DENIED.

SO ORDERED,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: December 10, 2021
        New York, New York

Copies transmitted this date to all counsel of record.

14